OPINION *Page 2 
{¶ 1} Defendant-appellant Osama J. Oweis appeals his conviction, following a jury trial, on one count of Aggravated Robbery, one count of Grand Theft and two counts of Kidnapping and the October 1, 2007, sentence from the Delaware County Court of Common Pleas.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On December 30, 2005, Erin Davis and Amanda Withrow (nka Amanda Brenneman) were working at Pizanno's, closing the shop for the night when it was robbed by two men in masks. Following an investigation, Osama J. Oweis and Brandon were charged in connection with this crime.
 {¶ 4} The Delaware County Grand Jury indicted Appellant Osama J. Oweis for one count of Aggravated Robbery, two counts of Kidnapping, and one count of Theft.
 {¶ 5} At trial, Erin testified that she had just returned from her last delivery and noticed two men dressed in black with hoods walking behind the pizza shop. (T. at 144). Erin entered the pizza shop and began closing the store when a man in a black ski mask covering his face approached her with a knife. (T. at 147). Erin said that the man never spoke. She did observe that the man had brown eyes. (T. at 147). The man grabbed Erin by the arm and took her to the front of the store where she noticed that a similarly dressed man was holding a knife to Amanda's throat and ordering her to open the cash register. (T. at 148).
 {¶ 6} Amanda testified that she was counting the cash from that night's sales when two masked men entered the store with knives. (T. at 171). She turned to run *Page 3 
toward the back of the store when one of the men ordered her to stop and held her at knifepoint. The man with Amanda told her to enter her security code, open the register, and give him the money. She complied with his orders. (T. at 171). The other man returned to the front of the store with Erin, whom he was holding at knifepoint. Id.
 {¶ 7} After Amanda opened the register and gave the money to the robbers, the girls were forced into a corner of the store at knife point. (T. at 149). At that time, one of the robbers referred to the other man as "Sam" and then corrected himself and referred to him as "Caleb." (T. at 149-150).
 {¶ 8} Once the men left, Amanda called the store manager who then called "911". Surveillance photos corroborated the testimony of both Erin and Amanda. (T. 151).
 {¶ 9} Erin further testified at trial that she knew Appellant Oweis prior to the robbery because he worked at the pizza shop with her, and that he had quit just before the robbery. She further testified that he went by "Sam." (T. at 155-156). Amanda testified that she also knew Appellant as "Sam". (T. at 177).
 {¶ 10} Elizabeth Lynch, the manager of Pizanno's, also testified at trial. (T. at 182). She testified that she knew Appellant as "Sam" and that he had stopped coming to work a week or two before the robbery. (T. at 189). She further testified that Appellant owed her money because she gave him a cash advance so he could move into an apartment. (T. at 189).
 {¶ 11} Several law enforcement officers also testified at trial. Deputy Jason Passet testified that on the night of the robbery he was called out with his canine partner to see if he could track the route of the robbers. He testified that his dog tracked the *Page 4 
scent of the robbers on the north side of the pizza shop through a grassy area to a residential street. (T. at 215-216).
 {¶ 12} Deputy Brian Blair testified that he interviewed Appellant soon after the robbery and that Appellant told him that he was at home the night of the robbery. However, Appellant's roommate told Deputy Blair that he and Appellant were out drinking the night of the robbery. (T. at 225-226). When confronted with the discrepancy, Appellant changed his story. (T. at 226).
 {¶ 13} Detective Franken from the Columbus Police Department testified that he was investigating a series of robberies in Columbus in which Brandon Cramer was a suspect. Eventually Brandon Cramer and his girlfriend were arrested. Through a series of interviews, Detective Franken learned that Brandon Cramer and Appellant were responsible for the robbery at Pizanno's. (T. at 248-249).
 {¶ 14} Brandon Cramer testified that he and Appellant robbed Pizanno's. Brandon Cramer explained to the jury that he cooperated in the investigation and was serving a 20 year prison term. (T. at 290). Cramer detailed how he and Appellant bought the masks they used during the robbery, etc. (T. at 272). He also detailed how the two of them left their car in a residential neighborhood in the area that the police dog tracked. (T. at 276). Cramer also testified that he accidentally called Appellant by name during the robbery and tried to correct his mistake by calling Appellant "Caleb". (T. at 279). Finally, Cramer testified that he and Appellant divided the money they stole. (T. at 280).
 {¶ 15} Brandon Cramer's girlfriend, Brooke LaMosse, testified as well. Her testimony corroborated Cramer's testimony. (T. at 326-349). *Page 5 
 {¶ 16} The jury returned a conviction on all counts of the Indictment. The trial court sentenced Appellant to a total of seventeen years prison.
 {¶ 17} Appellant now appeals, raising the following sole assignment of error:
 ASSIGNMENT OF ERROR {¶ 18} "I. THE PROSECUTING ATTORNEY'S COMMENTS ON APPELLANT'S FAILURE TO TESTIFY AND FAILURE TO PRESENT EVIDENCE CONSTITUTED PROSECUTORIAL MISCONDUCT AND DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."
 I. {¶ 19} In his sole assignment of error, Appellant argues that certain statements made by the prosecutor during closing arguments constituted prosecutorial misconduct, thereby denying him a fair trial. We disagree.
 {¶ 20} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and, if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial.Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v. *Page 6 Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749." Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.
 {¶ 21} Appellant directs us to the following statements which were made during the rebuttal portion of the State's closing argument, wherein the prosecutor said:
 {¶ 22} Prosecutor Yost: ". . . But I would like you to ask yourself about the self-interest if the defendant who does not want to accept responsibility for his actions . . ."
 {¶ 23} Defense counsel: "I'm going to object to that, Your Honor."
 {¶ 24} The Court: "Overruled". (T. at 447)
 {¶ 25} Prosecutor Yost: ". . . The defense talked about fingering, Brandon fingering Osama to save his own skin. You heard Brandon at length. You heard Detective Franken from Columbus. What you didn't hear about is any other accomplices for any of these other robberies."
 {¶ 26} Defense Counsel. "I'm going to object, Your Honor."
 {¶ 27} The Court: "Sustained." (T. at 452).
 {¶ 28} Upon review of the entire closing and the context in which the statements were made, we find the prosecutor's comments were not improper. Defense counsel ended his closing arguments with the following statements:
 {¶ 29} "The one theme and the one issue that runs from the beginning to end in this trial is Brandon Cramer and his self-interest. Everything here today and the last couple of days you've heard goes back to one and one thing only, that's Brandon and his girlfriend getting off and getting deals to save their butts. (T. at 446).
 {¶ 30} On rebuttal, the prosecutor responded to the above statements as follows: *Page 7 
 {¶ 31} "Perhaps the first thing should be first he got up and told you that this is a case about self-interest and it's not a case, the issue isn't about the truth. Well, the only problem with that is it is. There was an indictment brought, the judge will tell you that's what we're alleging the truth is and that it was our job today and over the last several days to bring in proof beyond a reasonable doubt to show that that indictment was true. We are here about the truth and we're about self-interest, so I guess Mr. Cornely and I agree about that. But I would like you to ask yourself about the self-interest of the defendant who does not want to accept responsibility for his actions — ." (T. at 447).
 {¶ 32} We do not find that this statement was intended as a reference to Appellant's failure to testify at trial in his own defense, but was instead a response to defense counsel's comments on the prosecuting witness' self-interest.
 {¶ 33} With regard to the prosecutor's statement about the jury not hearing any testimony about other accomplices, we do find that such statement can be characterized as a comment on Appellant's failure to testify.
 {¶ 34} Read in context and in response to defense counsel's closing arguments, it appears much more consistent that such statements were made to reinforce the testimony of Brandon Cramer and his girlfriend.
 {¶ 35} We further find that Appellant has not demonstrated, but for these statements by the prosecutor, the outcome of the trial would have been different. *Page 8 
 {¶ 36} Appellant sole assignment of error is overruled.
 {¶ 37} For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
 Wise, J. Hoffman, P. J., and Gwin, J., concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
Costs assessed to Appellant. *Page 1